# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| Gerald Mercer, | ) | Civil Action No. 6:18-cv-02915-JMC |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Andrew M. Saul, *Commissioner of Social Security Administration*, | ) | |
| Defendant. | ) | |

This action arises from Plaintiff Gerald Mercer's application to the Social Security Administration seeking Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"), 42 U.S.C. § 405(g) (2019). The matter before the court is a review of the Magistrate Judge's Report and Recommendation ("Report") recommending that the court affirm the Commissioner's decision. (ECF No. 22 at 21–22.) For the reasons stated below, the court **ACCEPTS** the Report (ECF No. 22) and **AFFIRMS** the Commissioner's final decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards, which the court incorporates herein without a full recitation. (ECF No. 22 at 1–15.) Plaintiff applied for SSI and DIB in November 2014, alleging that his disability began in June 2009. (*Id.* at 1.) The original "date of last insured" ("DLI") was adjusted from June 2009 to January 2010. (*Id.* at 1–2; 10-2 at 76.) In short, Plaintiff suffered injuries to his neck and left shoulder while "restraining an unruly patron at the restaurant where he worked." (*Id.* at 5; 10-5 at 40–46.) As a result, he experiences neck stiffness that negatively impacts his ability to sleep. (*Id.* at 12–13 (citing ECF No. 10-2 at 58–60)

1

("I keep having to—I keep waking up, readjusting, readjust the pillow. I may get five, six hours [of] sleep a night from it. But the pain is just constant burning type pain like a nerve or something.")).) Plaintiff further stated, "as far as resting, sleeping, whatever, I'll stay in a recliner six to eight hours a day to—five or six hours just roughly" (*Id.* (citing 10-2 at 63–64).) Plaintiff also underwent left shoulder surgery, but it has limited his ability to raise his left arm "to about horizontal before he had sharp shooting pain." (*Id.* at 14 (citing ECF No. 10-2 at 68–69).)

The Social Security Administration denied Plaintiff's initial application and his request for reconsideration. (*Id.*) Plaintiff appeared before an Administrative Law Judge ("ALJ") in April 2017 seeking a review of his application. (ECF No. 10-2 at 20–26.) The ALJ issued an "Unfavorable Decision" that denied Plaintiff's request for SSI and DIB. The Report provides the ALJ's reasoning, as follows:

> The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.
>
> The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 1, 2009, through his date last insured of December 31, 2010 (20 C.F.R. § 404.1571 *et seq.*).
>
> Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, bilateral carpal tunnel syndrome, and mild arthritis of the left shoulder (20 C.F.R. § 404.1520(c)).
>
> Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).
>
> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except he could not climb ladders, ropes, or scaffolds; he could not reach overhead bilaterally; he could not work at unprotected heights; and he could perform frequent but not constant handling and fingering bilaterally.
>
> Through the date last insured, the claimant was unable to perform any past relevant

work (20 C.F.R. § 404.1565).

The claimant was born on July 6, 1956, and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 C.F.R. § 404.1563).

The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569(a)).

The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2009, the alleged onset date, through December 31, 2010, the date last insured (20 C.F.R. § 404.1520(g)).

(ECF No. 22 at 2–3.) The Appeals Council denied Plaintiff's appeal thereby rendering the ALJ's assessment to be the final decision of the Commissioner. (*Id.* at 3; 10-2 at 5–11, 20–30.)

Plaintiff filed a Complaint on October 26, 2018. (ECF No. 1.) The Commissioner provided the administrative record to the court on April 15, 2019. (ECF No. 10.) Plaintiff filed a brief on June 17, 2019. (ECF No. 17.) The Commissioner filed a brief on July 26, 2019 (ECF No. 19), to which Plaintiff filed a timely response brief on August 9, 2019 (ECF No. 20). The Magistrate Judge issued a Report on October 22, 2019, recommending that this court affirm the Commissioner's final decision because it "is based on substantial evidence and is free of legal error." (ECF No. 22 at 22.) Plaintiff timely filed Objections to the Report on November 19, 2019 (ECF No. 26), and the Commissioner filed a Reply on December 3, 2019 (ECF No. 27).

## II. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local

Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id*. at 271. As such, the court is charged with making *de novo* determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). In the absence of specific objections to the Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Furthermore, a failure to file specific, written objections to the Report results in a party's waiver of the right to appeal from the judgment of the court based upon such recommendation. *See* 28 U.S.C. § 636(b)(1). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See id.*

### III. DISCUSSION

The court observes that Plaintiff's objections merely rehash claims he asserted in his June 2019 brief. (*See* ECF No. 22 at 15; *see also* ECF No. 17 at 14–21).) However, because Plaintiff objects to specific portions of the Report, the court is obligated to conduct a *de novo* review of the pertinent sections. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

A. <u>Plaintiff's First Objection</u>

Plaintiff objects to the Magistrate Judge's finding "that the ALJ's Listing 1.04(A) error was harmless . . . the ALJ's lack of analysis is harmful error as there is significant evidence to support

Plaintiff's meeting of Listing 1.04(A), and at a minimum, warranting a proper analysis for a [c]ourt to review."[1] (ECF No. 26 at 1.) Specifically, Plaintiff claims that remand is necessary because the Magistrate Judge noted that "[the ALJ] committed error in his analysis" of Listing 1.04(A). (*Id.* at 2.) Moreover, Plaintiff asserts that the ALJ's ruling is devoid of "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent requirements to the record of evidence." (*Id.* at 1–2 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling"); *Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)).)

The Commissioner contends that: (1) the Magistrate Judge's "identification of an error" in the ALJ's Listing 1.04(A) analysis is an exaggeration and Plaintiff "arguably overstates [] the findings: the [Report] does not evidence [sic] a specific conclusion that the ALJ 'committed error,' nor that the Magistrate Judge would need to make such a conclusion in the first instance." (ECF No. 27 at 2 (citing ECF No. 22 at 17 (stating that "*any* error in the ALJ's analysis of Listing 1.04(A) is harmless" and a "[2010 MRI] is *potentially contrary* to the ALJ's statement.") (emphasis in original)).); (2) Plaintiff did not cite to "any relevant-period evidence of motor loss accompanied by sensory or reflex loss." (*Id.* (citing ECF No. 22 at 15–18; 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04(A)).); and (3) Plaintiff's interpretation of *Radford* is inaccurate and thus irrelevant to this action. (*Id.* at 3.)

---

[1] "Listing 1.04 concerns disorders of the spine. It provides various ways to obtain disability benefits for back problems. The Listing identifies, by way of example, osteoarthritis, vertebral fracture, herniated disc, spinal stenosis, and degenerative disc disease as possible impairments. The Listing requires the compromise of either the nerve root or spinal cord; the three subsections describe the resulting criteria that must be satisfied to be found disabled." *Social Security Disability Law and Procedure in Federal Court: Evaluation of Particular Impairments*, § 5:61 Listings of impairments—§ 1.04 (2020).

The court finds that the Magistrate Judge did not err in determining that the ALJ correctly analyzed Listing 1.04(A). (*See* ECF No. 26 at 1.) A claimant must satisfy all of the Listing medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Under 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04(A), there must be evidence of "nerve root compression characterized by neuro-anatomic distribution pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." In determining whether the ALJ has provided "a coherent basis" for the step three determination, the ALJ's decision must be read as a whole. (*See* ECF No. 22 at 17 (citing *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018)).)

Here, Plaintiff did not proffer evidence of motor loss accompanied by a sensory or reflex loss within the relevant time period. (*See* ECF No. 27 at 3 (citing ECF No. 10-5 at 8–10.) The Magistrate Judge determined that:

> The plaintiff is correct that the 2010 MRI showed findings of stenosis, small disc herniation, and suspected impingement of the nerve root, which is potentially contrary to the ALJ's statement that "MRI examinations failed to reveal any significant herniations, stenosis, or nerve root impingement" Nonetheless, the plaintiff does not satisfy this listing because the medical record for the relevant period does not contain evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss" as required by Listing 1.04(A). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).
>
> . . .
>
> Specifically, as noted by the ALJ in the RFC assessment, in February 2010, electrodiagnostic testing showed sensory function and reflexes within normal limits in the plaintiff's arms and in September 2010, Dr. Cecchini-Purgavie [] found the plaintiff's sensory function intact in the C6, C7, and C8 distribution. Further, in evidence post-dating the date last insured, the plaintiff had no pathologic reflexes in April and December 2011[] and his sensory function was intact in July and December 2014.

(ECF No. 22 at 17–18 (citing ECF Nos. 10-2 at 24; 10-7 at 2–5, 11–13, 23–24, 34–35; 10-9 at 24–25, 29; 10-12 at 58–60) (internal citations omitted)).)

Furthermore, the ALJ cited to notes written by Plaintiff's medical providers, none of which mention any permanent functional limitations. (*See* ECF Nos. 10-2 at 25; 22 at 20–21).) In addition, the Report provides the following regarding MRI results:

> the ALJ noted in the RFC assessment that an MRI of the plaintiff's cervical spine in January 2010 [] showed cervical spondylosis with central canal stenosis seen at the C4-5 through C6-7 level. Multilevel bilateral neural foraminal encroachment appeared most progressed on the left at the C4-5 and C5-6 level. On physical examination, the claimant had trace grip strength weakness bilaterally and trace give-way weakness in the left upper extremity with a Spurling's sign down the left upper extremity.

(ECF No. 22 at 16.)

Absent evidence of sensory or reflex loss, Plaintiff cannot satisfy the Listing 1.04(A) criteria. Moreover, Plaintiff's "incorrect medical statement" claim is misleading; the Magistrate Judge stated that "*any* error by the ALJ in the Step Three analysis of Listing 1.04(A) was harmless." (ECF No. 22 at 18.) While the Magistrate Judge acknowledged *potentially contrary* findings, the court agrees that such a discrepancy is harmless. Accordingly, the court disagrees with Plaintiff's claim that the administrative record "shows evidence supporting at least the first part of Listing 1.04(A) is met" and therefore "the ALJ had a duty to provide adequate analysis to support his denial of [Plaintiff's] benefits." (ECF No. 26 at 2 (citing ECF No. 22 at 17).)

In regard to *Radford*, the court finds that the Magistrate Judge did not err in describing Plaintiff's *Radford*-based claims as "unpersuasive." (*See* ECF No. 26 at 5.) Indeed, "*Radford* addressed whether a claimant need show that particular symptoms persisted simultaneously or in proximity" to establish "the chronic nature of [their] condition." (ECF Nos. 27 at 3; 22 at 17 (citing *Radford*, 734 F.3d at 294) (internal citation omitted)).) Here, the issue is whether Plaintiff demonstrates nerve root compression, limitation of motion of the spine, and motor loss

7

accompanied by sensory or reflex loss as required by Listing 1.04(A), not whether he has a chronic condition.

Therefore, Plaintiff's first objection fails to establish a basis for the court to remand this action for further administrative review.

B. <u>Plaintiff's Second Objection</u>

Plaintiff objects and asserts that "[t]he medical record as outlined by the Magistrate [Judge] reflects [a] RFC requiring more limitations than the [record] provided by the ALJ." (ECF No. 26 at 5.) Specifically, "[medical] records prior to [Plaintiff's] DLI show that he should have met Listing 1.04(A), or, worst case, was much closer to satisfying it than the ALJ noted in his Listing analysis. This alone would support stricter arm and shoulder limitations than provided in the ALJ's RFC." (ECF No. 26 at 6.) The court finds that the Magistrate Judge correctly determined that the ALJ's RFC is supported by substantial evidence and that Plaintiff's assertion is unpersuasive.

The United States Supreme Court has defined "substantial evidence" is "'more than a mere scintilla'" and that it means "'such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 299 (1938)). Notably, Plaintiff concedes that the Report correctly recites his medical history. (ECF No. 26 at 5 ("The Magistrate accurately chronicles [Plaintiff's] medical history, including the MRI testing, the physical therapy that did not cease the hand numbness, the decreased range of motion in [his] shoulder, the surgery, the continued 'severe foraminal stenosis,' and the progression of the symptoms since the date of injury.").)

Here, the Magistrate Judge found that "substantial evidence supports the [Residual Functional Capacity ("RFC")] assessment." (ECF No. 22 at 20.) The Report provides the

Magistrate Judge's reasoning, as follows:

> [T]he ALJ considered the relevant time period as the period from June 1, 2009 (the plaintiff's original alleged disability onset date) through December 31, 2010 (the plaintiff's date last insured), and the court will do the same here. The ALJ noted that the evidence for the relevant time period was "relatively sparse.". Importantly, the plaintiff points to no care provider who imposed specific functional limitations during the relevant period that were more significant than those the ALJ imposed here. The ALJ specifically considered the plaintiff's cervical MRI from January 11, 2010, which, as discussed above, showed cervical spondylosis with central canal stenosis at the C4-5 through C6-7 levels, without definite impingement or myelomalacic changes; a right parasagittal small disc herniation at C6-7; multilevel bilateral neural foraminal encroachment; and potential impingement of the exiting nerve roots at those levels and potentially the exiting C7 nerve root. The ALJ also considered electrodiagnostic testing from February 2010 that showed mild to moderate carpal tunnel syndrome, while strength, sensory, and reflex functions in the plaintiff's arms were within normal limits. The ALJ further noted that the plaintiff engaged in physical therapy, and Dr. Bauerle found a mild progression in his range of motion in April 2010. After the plaintiff showed no additional improvement, in June 2010, Dr. Bauerle recommended evaluation by Dr. Cecchini-Purgavie and additional conservative treatment.

(*Id.* (citing ECF Nos. 10-2 at 20–26; 10-7 at 2–3, 23, 27–29) (internal citations omitted)).)

Accordingly, because there is sufficient evidence to support the ALJ's RFC assessment, the court finds that Plaintiff's second objection fails to show that remand is necessary.

## IV. CONCLUSION

After a thorough review of the Report and the record in this case, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 22) and **AFFIRMS** the Commissioner's final decision.

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

March 6, 2020
Columbia, South Carolina

9